UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CHRISANNE CHRISTENSEN            CIVIL ACTION NO.
                                    4:08CV04081

VERSUS

ACXIOM INFORMATION SECURITY      JUDGE HENDREN
SERVICES, ET AL                  JURY DEMANDED

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTIONS FOR SUMMARY
JUDGMENT FILED BY BOTH SEPARATE DEFENDANTS**

MAY IT PLEASE THE COURT:

Plaintiff, CHRISANNE CHRISTENSEN, respectfully responds in

opposition to both of the motions for summary judgment[1] filed by

separate defendants Per Mar, Inc. ["Per Mar"] and Acxiom

Information Security Services, Inc. ["Acxiom"], as follows:

I.   **BACKGROUND**

> *An erroneous or careless consumer report
> serves no purpose but to substantially damage
> the target of the report, who after
> publication can do little to correct the
> damage caused by the report.[2]  Criminal
> records data is the most potentially damaging
> kind of information that defendants could
> have reported about plaintiff.[3]  Plaintiff*

---

[1]     Plaintiff is also filing a motion in limine and motion
to strike, which are adopted herein by reference.  Plaintiff is
also filing a motion to dismiss her state law claims only.  That
will streamline the case for trial and, since the remedies are
duplicative but greater under the FCRA, plaintiff does not forego
any remedies.

[2]     **Bartels v. Retail Credit Co.**, 175 N.W.2d 292 [Neb. 1970].

[3]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09,
p.54. Contrast Acxiom's unwillingness to admit that criminal records data is
the most potentially damaging. Acxiom/Curtis Schwall [FRCP 30[b][6]],

> *has no criminal history of any kind and has*
> *no history of committing a crime, being*
> *arrested or being convicted of anything.[4]*
> *Plaintiff has a stellar reputation amongst*
> *those who know her as an outstanding*
> *professor and is key to obtaining grant*
> *monies for her employer institutions.*

Plaintiff filed this Fair Credit Reporting Act [15 U.S.C. 1681, et. seq.] suit against defendants and plaintiff shows that the evidence proves that defendants violated the Fair Credit Reporting Act [FCRA] in that Per Mar and Acxiom prepared and published false consumer reports about plaintiff and failed to use strict procedures to assure the maximum possible accuracy of that report and violated the FCRA in other respects.  Plaintiff had applied for employment with an educational university and the consumer report was prepared and published for use in her consideration for that position.

Plaintiff contested the inaccurate consumer report to defendants, defendants failed to conduct a real reinvestigation, and a second confirmation [another false reporting] of the inaccurate report was published to the same educational institution, Mount Mercy College ["MMC"], located in Cedar Rapids, Iowa.  Within a couple of days, defendants prepared an "amended" consumer report to MMC which no longer listed the

---

deposition, taken 6/2/09, pp.79-81.

[4]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, p.67.

purported criminal conviction, however the damage was done.

As a necessary background, plaintiff is a psychology professor at Southern Arkansas University ["SAU"] in Magnolia, Arkansas.  She previously taught at Sul Ross University ["SRU"] in south Texas and she lived in Uvalde, Texas while teaching at SRU.  Plaintiff is in a specialized area of study, teaching and lecture.  She studies, teaches and lectures, among other topics, domestic violence and the psychology of domestic violence to college students and peers.[5]  Plaintiff is a key person in obtaining grant monies for SAU.

Plaintiff sought to attain a professor position at MMC, in Cedar Rapids, Iowa.  She was highly qualified for the position and MMC had performed countless hours of screening her, interviewing her and having her travel to Iowa to be interviewed by faculty and to perform lengthy trial lectures for peer review. The process is protracted, expensive, time-consuming and rigorous.  Professorship positions are not easy to attain particularly in a specialty field.  Further, plaintiff's specialized area of work and desire to advance was particularly well suit for a smaller, private university, like MMC, having a mission of community service and involvement.

Plaintiff is very well liked at SAU and has a strong

---

[5]     Plaintiff's deposition, taken 5/22/09, pp.60-62.

reputation of excellence.[6]   Plaintiff saw a career move to MMC as particularly important for advancement in her field.

Plaintiff had been approved for employment by MMC and a contract was being mailed pending the final and sole step in the process, a criminal records background screen.  Knowing that she had never even been arrested, plaintiff gladly signed the waiver[7] for MMC and plaintiff expected the agreed upon contract to arrive shortly.  Plaintiff had taken many steps to ready herself for an immediate and permanent move to Iowa.

MMC engaged Per Mar, a tiny investigations firm, in Cedar Rapids, Iowa, to provide a criminal records consumer report to MMC pertaining to plaintiff.[8]  In turn, Per Mar contracted with Acxiom to prepare and publish a criminal records portion of a consumer report pertaining to plaintiff, for employment purposes.[9]  Plaintiff had signed the waiver and supplied a number

---

[6]     Since plaintiff was unable to obtain the position at MMC, she had to ask to stay at SAU.  Her request was approved.  Very recently, she was approved for tenure at SAU.

[7]     Per Mar/Lisa Yarham deposition, taken 5/29/09, pp.4-16, EXHS. A-C.

[8]     Per Mar/Lisa Yarham deposition, taken 5/29/09, pp.4-16, EXHS. A-C.

[9]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, pp.5-13, EXH. 2; Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09, p.7; Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.15-21,60.  Acxiom markets its consumer reports by claiming that its customers can "legally insulate" themselves from claims involving workplace violence and negligent hiring. Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.59-63,78.

of key personal identifiers[10] for use in the background check and report process.[11]  It is important to note that Per Mar did nothing else....nothing.[12]

Although not disclosed until after the close of discovery and in violation of Rule 26 disclosure rules, and during an extended discovery period Your Honor initially permitted solely to allow the deposition of Acxiom and plaintiff,[13] Acxiom disclosed for the very first time in this litigation that it had, in turn, engaged Ramona Batts and her company Countywide [collectively "Batts"],[14] in south Texas, to perform the subject records search pertaining to plaintiff which resulted in the preparation and publication of the false consumer report at issue.  After sending Batts the personal identifiers of plaintiff, Acxiom did nothing else than retransmit data to Per

---

[10]    Acxiom claimed that the date of birth is the most critical personal identifier in matching criminal records to the target of the inquiry. Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, p.74.

[11]    Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.19-20.

[12]    Per Mar/Lisa Yarham deposition, taken 5/29/09, pp.4-16, EXHS. A-C [Yarham honestly testified that Per Mar does "nothing" to investigate the background of those it renders information about from its vendors; no cross-checking; no verification; "nothing." Id. at pp.8-12.].

[13]    After learning of Batts' identity and involvement and the non-disclosure and concealment of Batts' identity and involvement, Your Honor ordered, over Acxiom's objection, the deposition of Batts.

[14]    Ramona Batts' deposition, taken 6/23/09; EXH.2, pp.5-7,10-12,38.

Mar...absolutely "nothing."[15]

Batts was located in south Texas but not near Uvalde County, Texas.  Nonetheless, Acxiom used Batts to purportedly check the public record in Uvalde County, Texas, where plaintiff lived historically when she taught at SRU.[16]  Neither Batts or Countywide do business or record checks in Uvalde County, Texas.[17]  Of course, Acxiom falsely represents that third parties are not involved in doing searches for Acxiom however Acxiom concedes that is false.[18]

In yet another strange twist, Batts/Countywide engaged an "unknown" and unnamed person[19] in Uvalde County, Texas, to check the public record where plaintiff lived historically.[20]  Acxiom never even attempted to learn the identity of the person who performed the subject search and concealed Batts' identity

[15]     Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.28-33,45-47,66.

[16]     Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.21-30,45-46,115-120.  Acxiom hid Batts' identity and even resisted efforts in Acxiom's deposition. Id.

[17]     Ramona Batts' deposition, taken 6/23/09; pp.13-14.

[18]     Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.21-27,101-112.

[19]    Neither the defendants or Batts could ever testify as to the identity of this alleged person however Batts testified that she no longer employed the person.  **To this date, this person has never been identified**. Ramona Batts' deposition, taken 6/23/09; pp.13-14.

[20]    On the date of Acxiom's deposition, when Acxiom's witness first disclosed the involvement and identity of Batts, a court hearing was initiated and held by phone per Your Honor's order.  Acxiom objected to the deposition of Batts.  Your Honor ordered that Batts' deposition be taken.

throughout discovery until mid-June, during an extension of the discovery period.[21]

Acxiom and Per Mar prepared and published a criminal records consumer report to MMC, claiming that plaintiff had a criminal conviction on the offense of domestic violence/assault.  They reported to MMC that plaintiff's identifiers matched those connected to the criminal record information.  MMC immediately stopped the employment process with plaintiff and demanded that plaintiff rectify the matter, suggesting that plaintiff was less than truthful about her past in the professorship application process.

To recap, MMC [the end user] had a vendor relationship with Per Mar, a Cedar Rapids, Iowa, entity that is essentially a tiny investigations firm.  Per Mar in turn had a relationship with Acxiom, a company that prepares and publishes criminal records consumer reports.[22]  Both Per Mar and Acxiom concede that they are each "consumer reporting agencies"[23] under the Fair Credit

---

[21]    Ramona Batts' deposition, taken 6/23/09; p.33.
Q.  Did Acxiom ever request the identity of the actual human being that had performed the search?
**A.  No.  They never did.**

[22]    Ramona Batts' deposition, taken 6/23/09; pp.38-39 [Per Mar had no contact with Batts].

[23]    15 U.S.C. 1681a[p] "Consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. The term "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" means a consumer reporting agency that regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following

Reporting Act, 15 U.S.C. 1681, et. seq., specifically 1681a.[24]
Further, Per Mar and Acxiom concede that they prepared and
published a consumer report about plaintiff related to an
employment application process.[25]  Defendants may not delegate[26]
or "contract away" statutory duties under the FCRA. **Cunningham v.
Interlake S.S. Co.**, 567 F.3d 758 [6[th] Cir. [Ohio] June 02, 2009]
["Nor can the duty of the shipowner be contracted away, because
the obligation is not contractual."]; **McCartney ex rel. McCartney
v. Cansler**, 608 F.Supp.2d 694 [U.S.D.C. E.D. N.C. March 16,
2009].

---

regarding consumers residing nationwide: [1] **Public record information**. [2]
Credit account information from persons who furnish that information regularly
and in the ordinary course of business." Acxiom/Curtis Schwall [FRCP
30[b][6]], deposition, taken 6/2/09, p.112.

[24]     Defendants' answers to the complaint. Further, as a comparison:
**Williams v. LexisNexis Risk Management Inc.**, Slip Copy, 2007 WL 2439463
[U.S.D.C. E.D. Va. 2007] ["LexisNexis is a CRA [consumer reporting agency]
that provides a service called "Securint," which allows employers and other
paying customers to research the criminal backgrounds of consumers."
[parenthetical phrase explaining "CRA" added].]; **Miller v. Trans Union, LLC**,
Slip Copy, 2007 WL 2351199 [U.S.D.C. N.D. Ill. 2007] [addressing Accurint];
**Myers v. Bennett Law Offices**, 238 F.Supp.2d 1196 [U.S.D.C. Nev. 2002] ["It is
unclear whether NDR and Credit Chequers [the internet site Terry Sweet uses to
obtain credit reports] are "consumer reporting agencies," as defined by the
FCRA or merely resellers of consumer credit reports."  This case was a pre-
FACTA amendment case prior to reseller being defined under the Act.].
Contrast 15 U.S.C. 1681a[w], defining nationwide specialty consumer reporting
agency. **Marino v. UDR**, Not Reported in F.Supp.2d, 2006 WL 1687026 [U.S.D.C.
E.D. Pa. 2006] [U.D. Registry is a nationwide specialty consumer reporting
agency per 15 U.S.C. §1681a[p],[w].].

[25]     Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09,
pp.18-19, EXH.A.

[26]     Acxiom played vernacular games about this issue but it is clear
that Acxiom, like Per Mar, did nothing to assure accuracy.  Acxiom hid Batts'
identity.  No procedures were ever disclosed in discovery. Acxiom/Curtis
Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.21-33,43-45,47 [did
"nothing"],49-59,66.

In this case, plaintiff established through the depositions of the defendants and Batts that a criminal conviction of a man named <u>Christopher David Leal, who shares no common personal identifiers with plaintiff</u>,[27] was placed in the consumer report pertaining to plaintiff and was published to MMC.[28]  Further, according to Batts, <u>when she learned of the error on the same day it was reported to Acxiom and Per Mar by Batts</u>, Batts called Acxiom and told Acxiom of the error and Acxiom replied that it had already been reported to Per Mar and MMC yet Acxiom did nothing to rectify the error.  In sum, according to Batts, Acxiom could have cured the error <u>on the same day yet it did nothing</u>.[29]

---

[27]     Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, p.37-39,74. Oddly, Batts could not testify and say that her company was ever hired to perform a records search on Leal. Ramona Batts' deposition, taken 6/23/09; p.37.  Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, pp.38-41 [Christopher Leal's identifiers are totally different; only match is a partial match of "CHRIS" in first name only, ie., partial first name match only.].  Admittedly, there are countless Americans bearing a name that could be a partial match of the first name "CHRIS***," e.g., Christopher, Chrisanne, etc. Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, pp.53-54; Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09, pp.11-17, EXH. B.  Although the face of the Per Mar report claimed that plaintiff's personal identifiers matched the data from the criminal record, plainly it did not and defendants admit same at this time. Compare EXH.A, p.4 with Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, pp.30-34.

[28]     Ramona Batts' deposition, taken 6/23/09; pp.23-33; Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.18-19,32-39, EXH. A.

[29]     Ramona Batts' deposition, taken 6/23/09; pp. 27-29.
Q.  All right.  Let's -- let me back up and take this into two steps.  First, the day that a search was performed -- you don't know if it's Dr. Christensen or not, but you recall an incident –
A.  Yes.
Q.  -- where there was a search performed, and there was a mix-up on the identity of the criminal who had been convicted, true?
A.  The control number that was associated -- because you got a list of names, and every person had their own control number.  That's why I brought one of the exhibits to show that.
Q.  Now, as a consequence, your company turned over inaccurate information to Acxiom.  Is that true?

Batts testified that Acxiom did nothing to train her on Fair
Credit Reporting Act ["FCRA"] compliance and did nothing to
screen/check/audit her work from Uvalde County despite being
aware that Batts was further subcontracting the projects to

---

A.  Yes, but --
**Q.  Okay.  Let me take it a step farther.  And at that point, the same evening
that you provided them that inaccurate information, you contacted Acxiom
through Lauren Bulk.  Is that true?**
**A.  No.  We talked to Tony Noar.  N-O-A -**
**Q.  Tony Noar?  And he works for Acxiom --**
**A.  Yes.**
**Q.  -- is that true?**
**A.  That's correct.**
Q.  Was he your contact person?
A.  That was my contact person.
Q.  And he was the person that Acxiom had designated to interact with you,
true?
A.  That is correct.
Q.  And consequently, you told Anthony Noar, or Tony Noar –
A.  Uh-huh.
Q.  -- that an error had been made --
A.  Yes.
Q.  -- is that true?
A.  That is correct.
Q.  And you identified the control number and the person's identity that had
been affected?
A.  That's true, correct.
Q.  And Mr. Noar said, "Well, we've already turned that information over to
the end user," the person who had requested the information, true?
A.  Yes.
Q.  And did he suggest to you that he was going to take any corrective action
to fix the error?
A.  That was the end of the conversation with him and we got a letter from
Acxiom asking us to explain it about three days later.
Q.  About three days later?
A.  That's a guess.  Yes.  About -- like, the next day.  It was about three
days later.
PP.31-32
**Q.  All right.  Now, after your conversation was completed with Mr. Noar where
he said, "Hey, the information's already gone to the end user" -- Acxiom's
customer, did Mr. Noar ever suggest to you that they were going to take any
immediate action to cure the  problem?**
**A.  No.**  I called Lauren because basically, he and I kind of cut off and I
called Lauren and I said, "Is there anything I can do to reconcile myself?"
And she said, "Well, call me back in three months and we'll review your case,"
and I sent another letter in three months.
Q.  Now, that was after you got the termination notice?
A.  Yes.

others.[30]  Batts testified:

"Q.  All right.  I take it, that from what you've looked at in your file today and what you produced, you can't find any type of written procedures that Acxiom requested that you follow to comply with the Fair Credit Reporting Act.  Is that true?

A.  That would be correct.

Q.  And you never were asked to come to any Acxiom facility for training, true?

A.  That's correct.

Q.  They never sent you any type of videotape or DVD instructions on complying with the Fair Credit Reporting Act, true?

A.  That is true.

Q.  And you don't have anything in front of you, even in writing, that shows any type of directives or instructions on complying with the Fair Credit Reporting Act?

A.  That would be correct.

Q. Did they ever supply you any type of directives about reinvestigation of disputes or contested information?

A.  No.  They did not."[31]

Further, Batts' contract with Acxiom did not even request an

---

[30]    Ramona Batts' deposition, taken 6/23/09; p.13 [only did searches in person in Bell County], 13-14 [had no office in Uvalde County to do search], 14 [did not go and do searches in Uvalde County, Texas], 14 [subcontracted unknown and unnamed person to do searches in Uvalde County, Texas], 14 [fired person after Christensen report debacle], 14 [does not recall procedure used to check records in Uvalde County].

[31]    Ramona Batts' deposition, taken 6/23/09; pp.19-20.

certification by Batts that Batts would comply with the duties under the FCRA! Batts testified:

Q. All right. I just probably have just a few more questions. Do you know whether your contract documents -- number -- let's say, one, two, and three -- did any of those documents ever provide for a certification by your company of compliance with the Fair Credit Reporting Act?

A. I have to say "no".

Q. All right. When you looked through there, you don't even remember seeing the word Fair Credit Reporting Act in those documents?

A. I have to say "no," but I do so many contracts that do that I don't know want to say I never have, but  I don't see anything."[32]

In fact, Batts had never even met a representative of Acxiom before meeting Ms. Stewart, counsel of record for Acxiom.[33] Hence, Acxiom did nothing to check Batts' physical premises or meet or train her or her employees or subcontractors.[34]  Acxiom

---

[32]    Ramona Batts' deposition, taken 6/23/09; p.39.

[33]    Ramona Batts' deposition, taken 6/23/09; pp.14-16.  Acxiom just asked for a copy of her business license and insurance information. Id.

[34]    Ramona Batts' deposition, taken 6/23/09; pp.14-19.  There was no training and she could not identify any documents or even a copy of the FCRA. No training on how to read the public record.  Batts simply signed the form contract. EXH. 1.  Acxiom's contract and agreement do not discuss FCRA compliance and are focused on how to submit data to Acxiom and how to submit billings.

chose to only rarely audit her case samples from Bell County, Texas, only; never Uvalde County.[35]  Batts was fired by Acxiom after plaintiff initiated a complaint.[36]  Batts testified that Acxiom terminated her contract due to plaintiff's complaint and prior unspecified other delayed and inaccurate information from Batts.[37]

Per Mar testified that it was not pleased with learning that Acxiom used a partial first name only match to attribute the criminal conviction of Christopher David Leal to Chrisanne Christensen.[38]  Per Mar testified that Acxiom had previously used a "name only match" in attributing public records to a particular consumer [incorrectly], hence Per Mar knew Acxiom used this reckless approach to posting public records data to the wrong consumer's consumer report.[39]  While not knowing the precise computer routines used, Per Mar was aware that Acxiom was mis-

---

[35]     Ramona Batts' deposition, taken 6/23/09; pp.20-21,57.

[36]     Ramona Batts' deposition, taken 6/23/09; EXHS. A,B, pp.7-10. Acxiom had been sending Batts 10-15 projects an hour every business day. Id. at pp.21-23.  Acxiom provided substantial revenue to Batts. Id. at p.34.

[37]     Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.52-59.  Acxiom danced around trying not to disclose the firing of Batts due to the Christensen debacle.  The termination letter stated that there were other issues as well. Id. at pp.92-99, EXHS. 3-4.

[38]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, pp.38-42.  Per Mar described the "match" as "not even close." Id. at pp.39-40.

[39]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, p.37.

matching data.[40]  Acxiom has no idea what Batts did or did not do.[41]

Per Mar was unsure whether libel per se applied from falsely attributing a criminal conviction to plaintiff but Per Mar was very aware that plaintiff was in shock, was very frustrated, was very concerned, had set about having a private investigator and a Judge assist in trying to remedy the defendants' errors, and that plaintiff was losing a job opportunity.[42]  Plaintiff disputed the erroneous report and criminal conviction data to defendants.[43]

Per Mar testified that it totally relied on Acxiom to provide accurate information and, in turn, Per Mar knew that MMC was solely relying on Per Mar for an accurate consumer report in connection with plaintiff's employment application and

---

[40]    Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, pp.21-23,37-42.

[41]    Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, pp.59-60,69-71.

[42]    Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, pp.42 [libel per se discussed], 42 [very serious, grievous mistake], 36-37 [very frustrated], 66 [Conroy himself would have been very concerned if he was the target of the report], 65 [plaintiff was "very concerned"], 67 [Judge Mitchell and private investigator indicated it was a very serious matter], 55-57 [plaintiff wrote Per Mar and told them in her written dispute that MMC was withdrawing the employment offer; EXH. 7].

[43]    Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09, pp.8-9, EXH. A.  Payne testified that she requested a Texas state-wide criminal records search to be performed from in-house at Acxiom. Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09, p.9. Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09, p.45.

screening.[44]  Criminal records data is the most potentially

damaging information in Per Mar's consumer report and was the

only derogatory [and false] information in the whole consumer

report relative to plaintiff.[45]  Per Mar admitted that the

mismatch of data that was attributed to plaintiff does not

comport with Per Mar's expectations of reliability and

accuracy.[46]  The entire debacle that resulted could have been

avoided if either defendant had merely re-checked[47] and verified

the "positive hit" of criminal records information especially

considering the "minimum cost" of a mere phone call to the Uvalde

County Clerk of Court.[48]  Both defendants refused to do so, as

---

[44]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09,
pp.21-23,33-34,49-54.

[45]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09,
pp.34,54,66, EXH.A [consumer report explained on pp.23-41].

[46]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09,
pp.48-54. Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09,
pp.47-49 [admitting that Batts failed to comply with the FCRA although
incorrectly describing Batts as a third party and data furnisher].

[47]     Acxiom also performs electronic courthouse searches but not in
Uvalde County, Texas. Acxiom/Judith Tetzlaf [FRCP 30[b][6]], deposition, taken
6/2/09, pp.5-6; Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken
6/2/09, pp.75-92.

[48]     Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09,
pp.77-85,88-92; Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09,
pp.22-23,37 [Per Mar simply refused to pick up the phone and make a call], 74-
75 [takes "minutes" and at a "minimum cost"]; Acxiom/Jeannine Payne [FRCP
30[b][6]], deposition, taken 6/2/09, pp.9-20.  Acxiom testified that it knew
how to call courthouses to check criminal records. Acxiom/Catherine Rezabek
[FRCP 30[b][6]], deposition, taken 6/2/09, pp.7-8,12.  A call such as the one
Miss Payne made in the reinvestigation phase. Acxiom/Jeannine Payne [FRCP
30[b][6]], deposition, taken 6/2/09, p.11.

this was not their custom and way of doing things,[49] and hid
Batts' identity throughout discovery.[50]  The defendants sold the
subject report to MMC and admitted that MMC had an expectation to
rely on its alleged accuracy.[51]

Neither defendant re-checked the positive hit on a criminal
record.[52]  Neither defendant elected to simply re-verify by
phone.  Neither defendant took Batts' call the same day, when she
told Acxiom that an error had been made, and no one told MMC that

---

[49]    Proof of a pattern and practice is relevant and is one way to
establish willfulness. See **Dalton v. Capital Associated Indus., Inc.**, 257 F.3d
409, 418 [4th Cir. 2001]; **Holmes v. Telecheck Intern., Inc.**, 556 F.Supp.2d 819
[U.S.D.C. M.D. Tenn. 2008].  Acxiom called the Uvalde County clerk of court
AFTER-THE-FACT to learn that the subject criminal record did not belong to
plaintiff. Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09,
pp.11-17. Compare EXH. B, showing the actual court record from Uvalde County,
which included Leal's personal identifiers, including date of birth, name,
social security number, etc.

[50]    **As an example of the concealment, Acxiom repeatedly claimed that a
computer routine/program called "Soundex" was somehow involved in the mis-
match, which we later learned that it had nothing to do with the report at all
and we learned of Batts' identity**. Ex., Deposition of Judge William R.
Mitchell, taken May 27, 2009, p.14 [**Acxiom's counsel asking Judge Mitchell
about "Soundex"**].  This deposition will be introduced at trial and may be
filed at this time if it pleases the court.  **Of course, as with Batts and
Acxiom's procedures, Acxiom produced no documents relating to Soundex in
disclosure**. Compare Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken
6/2/09, pp.68-69.

[51]    Acxiom/Curtis Schwall [FRCP 30[b][6]], deposition, taken 6/2/09,
pp.59-60.

[52]    Acxiom had the ability to do a Texas state-wide search, in the
report preparation phase and again in reinvestigation, but opted not to do so.
Acxiom/Judith Tetzlaf [FRCP 30[b][6]], deposition, taken 6/2/09, pp.6-11.
Compare Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09, pp.9-
10.  Once performed in-house at Acxiom and after the damage was done, the
Texas state-wide search disclosed no criminal records related to plaintiff.
Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09, p.10. Compare
EXH. B, showing the actual court record from Uvalde County, which included
Leal's personal identifiers, including date of birth, name, social security
number, etc.

an error was made.  Instead they waited until plaintiff found out and complained and even then pretended not to be sure it was an error, despite prior knowledge, as Batts testified to.

Per Mar completely and illegally delegated its FCRA duties under sections 1681k and 1681e to Acxiom.  Acxiom, in turn, completely and illegally delegated its FCRA duties under sections 1681k and 1681e to Batts.  In turn, Batts hired and completely and illegally delegated her FCRA duties under sections 1681k and 1681e to the "unknown" and unnamed person[53] in Uvalde County, Texas, to check the public record where plaintiff lived historically.  Acxiom had the ability to do a state-wide criminal records search from the inception [and a great deal quicker] than a county-level search ostensibly at a local level.  Acxiom opted to wait to do a state-wide search until after it had botched the original report.[54]

None of the defendants or Batts could testify as to what procedures were used by the "unknown" and unnamed person to gather the criminal record data however plaintiff has established that the consumer report prepared by defendants and published to MMC, upon which MMC relied, was false and damaging.  Plaintiff deposed MMC, who had been named as a third party defendant by Per Mar, and MMC claimed the consumer report was not the cause of the

---

[53]     Ramona Batts' deposition, taken 6/23/09; pp.13-14.

[54]     Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09, pp.10-12.  "It is not standard to run a state-wide search." Id. at. p.11.

contract withdrawal.  Contrary to statements made to plaintiff, MMC claimed that plaintiff's phone call to the college [MMC] after the false consumer report was published, wherein she expressed extreme concern that her reputation at the MMC had been damaged, was the cause of the contract withdrawal.

Per Mar testified that plaintiff supplied an abundance of personal identification information to permit proper matching of records to her.[55]  Per Mar merely sent the identifiers to its three vendors [CSC,[56] Softtech and Acxiom[57]] and did nothing ["nothing"] else.[58]  Per Mar paid somewhere between $24 to $48 for the total consumer report.[59]

Per Mar testified that it had no procedures and did not know what Acxiom's procedures were for gathering and reporting public records data other than to concede its knowledge that Acxiom

---

[55]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, pp.15-16, EXH. 2.

[56]     A consumer reporting agency. **Pinson v. Equifax Credit Information Services, Inc.**, 316 Fed.Appx. 744, 2009 WL 595991, [Not Selected for publication in the Federal Reporter], [10th Cir. [Okla.], March 10, 2009]; **Washington v. CSC Credit Services, Inc.**, 199 F.3d at 268 [5th Cir.]; **Poulson v. Trans Union**, 370 F.Supp.2d 592, 593 [U.S.D.C. E.D. Tex. 2005]; **Smith v. Equifax Information Services, LLC**, 522 F.Supp.2d 822 [U.S.D.C. E.D. Tex. 2007].

[57]     A consumer reporting agency. **Guevares v. Acxiom**, Not Reported in F.Supp.2d, 2006 WL 2882571 [U.S.D.C. E.D. N.Y. 2006]; **Rosen v. Trans Union Corp.**, Not Reported in F.Supp.2d, 1999 WL 1080639 [U.S.D.C. N.D. Cal. 1999].

[58]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, p.21-24.

[59]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09, p.18.

historically had used a "name only match" in public records
gathering and that Per Mar totally and completely delegated its
responsibilities to its vendors and just repackaged and passed
along data it acquired.[60]  Acxiom did not have "any information
that...could be share[d] with the Jury in this case about how the
criminal record of Christopher David Leal became intertwined with
a report prepared about Dr. Chrisanne Christensen.[61]

## II.   RESELLERS OF INFORMATION ARE CONSUMER REPORTING AGENCIES

Defendants are resellers of information which they did not
garner and did nothing to verify.[62]  Defendants used information

---

[60]     Per Mar/Dan Conroy [FRCP 30[b][6]], deposition, taken 5/29/09,
pp.12-13 [routinely sells consumer reports to MMC], 15-16 [plaintiff supplied
all needed data and written, signed authorization], 17 [MMC wanted a driving
record, social security number verifications check and a criminal records
background check], 18 [report costs between $24 to a max of $48], 18-23 [used
CSC/Equifax for social security number check, Softtech for driving records
check], and Acxiom for the criminal records check], 21-24 [total delegation of
duties and no re-checking, even on "hit" for record], 37-42 [name only matches
are reckless and not conforming to expectation of reliability and accuracy].

[61]     Acxiom/Jeannine Payne [FRCP 30[b][6]], deposition, taken 6/2/09,
p.25.

[62]     Per Mar/Lisa Yarham deposition, taken 5/29/09, pp.5-17 [explaining
that Per Mar simply took plaintiff's identifiers and sent them to Per Mar's
various "vendors" [CSC, which is an Equifax affiliate; Softtech; Acxiom]
seeking information for compilation into a consumer report], EXHS. A-C. Courts
considering the activities performed by these defendants have found the
defendants in those cases to be consumer reporting agencies. See, ex., **Boris
v. Choicepoint Services, Inc.**, 249 F.Supp.2d 851 [U.S.D.C. W.D. Ky. 2003];
**Joiner v. Revco Discount Drug Centers, Inc.**, 467 F.Supp.2d 508 [U.S.D.C. W.D.
N.C. 2006]; **Joiner v. Choicepoint Services, Inc.**, Not Reported in F.Supp.2d,
2006 WL 2669370 [U.S.D.C. W.D. N.C. 2006]; **Downie v. Revco Discount Drug
Centers, Inc.**, Slip Copy, 2006 WL 1745063 [U.S.D.C. W.D. Va. 2006]; **Ewbank v.
ChoicePoint Inc.**, 551 F.Supp.2d 563 [U.S.D.C. N.D. Tex. 2008]; **Bradley v.
Choicepoint Services, Inc.**, Slip Copy, 2007 WL 2844825 [U.S.D.C. E.D. Pa.
2007]; **Campos v. ChoicePoint, Inc.**, 237 F.R.D. 478 [U.S.D.C. N.D. Ga. 2006];
**Obabueki v. Choicepoint, Inc.**, 236 F.Supp.2d 278 [U.S.D.C. S.D. N.Y. 2002].

obtained from Equifax Information Services, LLC,[63] as well as
public records information garnered from Batts.[64]  Further,
neither defendant disclosed their roles as resellers of Batts-
provided information during discovery. Discussed supra.  Further,
defendants have liability both for the unnamed and undisclosed
public records gatherer at issue and for Batts.

Section 111 of FACTA specifically defines a "reseller" as:
"a consumer reporting agency that-- [1] assembles and merges
information contained in the database of another consumer
reporting agency or multiple consumer reporting agencies
concerning any consumer for purposes of furnishing such
information to any third party, to the extent of such activities;
and [2] does not maintain a database of the assembled or merged
information from which new consumer reports are produced. 15
U.S.C. §1681a[u].  This provision became effective on March 31,
2004. 12 C.F.R. §222.1.

"Resellers" are those companies that purchase consumer
report information from one or more of the three large consumer
reporting agencies [Equifax, Experian, and Trans Union] or from
other public record sources and sell the information to other

---

[63]    There were multiple components to the total report.  Part of the
report contained information from Equifax.  Part of the report contained
information from Batts.  Part of the report contained information from other
sources.

[64]    As detailed, Batts engaged the unnamed and undisclosed person who
actually and allegedly gathered the inaccurate criminal records data
attributed to plaintiff.

users, and resellers are required to comply with all of the provisions of the Fair Credit Reporting Act [FCRA], 15 U.S.C. 1681-1681u, that apply to consumer reporting agencies.  Resellers regularly assemble consumer credit information and sell the information to third parties in the form of consumer reports. Resellers therefore fall within the FCRA's definition of "consumer reporting agency." Section 1681a[f].

The definition of reseller under the FCRA was not altered by the 1996 FCRA amendments, which went into effect on September 30, 1997.  Thus, resellers continue to be "consumer reporting agencies" under the amended FCRA and must comply with the full panoply of FCRA provisions but, per FACTA, resellers have their own specific reinvestigation duties. Order in the **Matter of First American Real Estate Solutions, LLC**, Docket No. C-3849; Donald Clark, FTC Informal Staff Op. Letter, "Meltzer Letter," 7/23/99, **Wilson v. Rental Research Servs., Inc.**, 165 F.3d 642 [8th Cir. 1999] [Finding Rental Research Services, Inc., is a "reseller" and a "consumer reporting agency" under the FCRA].

Resellers must comply with all FCRA duties imposed upon consumer reporting agencies, including end user investigation requirements and the FCRA's requirements for proper certification.[65]  Resellers likewise must comply with the

---

[65]    In hearings on H.R. 2622, which became the FACT Act, the FTC testified, "Persons who purchase consumer reports for resale [also known as 'resellers'] are covered by the FCRA as consumer reporting agencies and have all the obligations of other CRAs, including the duty to reinvestigate ...."

certification provisions of section 1681b, 1681e[a], and 1681k, as well as all other duties imposed upon consumer reporting agencies. **Weidman v. Federal Home Loan Mortgage Corp.**, 338 F.Supp.2d 571 [U.S.D.C. E.D. Penn. 2004].  A reseller can be a consumer reporting agency even if it merely re-transmits a consumer report to another consumer reporting agency. 1998 WL 34323759, FTC Staff Opinion Letter, William Haynes [June 9, 1998]; **Wilson v. Rental Research Servs., Inc.**, 165 F.3d 642 [8th Cir. 1999] [Finding Rental Research Services, Inc., is a "reseller" and a "consumer reporting agency" under the FCRA].

### III. THE DEFENDANTS ARE NOT FURNISHERS

The defendants are not "furnishers" under the FCRA.[66]  In the industry, furnishers are those entities who regularly transmit information concerning a particular debt owed by the consumer.  The furnisher reports the information to a consumer reporting agency.  The transmission of information from the furnisher to the consumer reporting agency is not a consumer report and does not fit the definition of consumer report and the

---

H.R. 2622-Fair and Accurate Credit Transactions Act of 2003: Hearing Before the H. Comm. on Financial Services, 108th Cong. [July 9, 2003] [prepared statement of the Federal Trade Commission].

[66]     While the FCRA does not explicitly define, "furnisher of information," the Courts have defined the term to mean "an entity which transmits information concerning a particular debt owed by a consumer to a consumer reporting agency." **Khalil v. Transunion, LLC**, 2008 WL 2782912 [U.S.D.C. E.D. Mich. July 17, 2008]; **Donohue v. C. Blosenski Disposal Co.**, 2006 WL 3423888 [U.S.D.C. E.D. Pa. 2006]; **Thomasson v. Bank One**, 137 F.Supp. 2d 721, 722 [U.S.D.C. E.D. La. 2001]; **Dimenzza v. First USA Bank, Inc.**, 103 F.Supp.2d 1296, 1299 [U.S.D.C. N.M. 2000].  Furnishers have first hand transactions or experiences with the consumer.

furnisher is not a consumer reporting agency.  Since courts are
not furnishers, consumer reporting agencies go directly to the
public record and record data manually or through computerized
transmissions and share that data further.  These consumer
reporting agencies cannot demand that the clerk of court
reinvestigate data which the agencies record, repackage and re-
transmit.  The court is not a subscriber or furnisher.  The court
is not concerned with utilizing the credit reporting function to
affect consumers who are their customers.

## IV.  SECTIONS 1681K AND 1681E[B]

Section 1681k of the FCRA creates heightened standards for
procedures used to collect consumer information for employment
purposes.  To fall within this section, the consumer report in
question must contain matters of public record that are likely to
have an adverse effect upon a consumer's ability to obtain
employment.  In this case, neither defendant made a simultaneous
reporting[67] to plaintiff that the alleged criminal conviction was
encompassed in the consumer report issued to MMC.[68]  Further, as

---

[67]    One of the duties both defendants breached is the notification
provision of 1681k. "Section 1681k of the FCRA requires that, when a consumer
reporting agency ["CRA"] furnishes a report to a customer regarding a
consumer,FN1  and the report contains information on the public record that is
"likely to have an adverse effect" upon a consumer's ability to obtain
employment, the CRA must "notify" the consumer "at the time" it furnishes the
report to the prospective employer. [footnote omitted]." **Williams v.
LexisNexis Risk Management Inc.,** Not Reported in F.Supp.2d, 2007 WL 2439463
[U.S.D.C. E.D. Va. 2007].

[68]    **Poore v. Sterling Testing Sys.,** 410 F.Supp.2d 557, 572 [U.S.D.C.
E.D. Ky. 2006].  Further, "...the central purpose of the FCRA clearly
indicates that, an agency which delays notification until after the agency has

shown from the evidence, neither defendant maintained reasonable, let alone strict, procedures to assure the maximum possible accuracy of the consumer report they jointly prepared and published.[69]  Plainly, both defendants failed to comply with all of their duties under section 1681k.  Clearly, the criminal records information was not accurate, not complete and not up-to-date.[70]

Plaintiff submits that she has more than met her prima facie showing under sections 1681k and 1681e[b].  In **Dalton v. Capital Associated Industries, Inc.**, 2001 U.S. App. LEXIS 15902, 257 F.3d 409 [4[th] Cir. 7/16/01] [Va.], the court found that plaintiff alleged defendant used inadequate procedure in reporting his criminal history, which led to a false report on his criminal record, which caused a job loss, when an investigative consumer report was issued to the employer. The lower court dismissed his suit.  The Fourth Circuit reversed.  The Court found plaintiff truthfully stated that he had never been convicted of a felony.

---

reason to question the accuracy of its report has not complied with the spirit of the Act." **Adams v. National Engineering Service Corp.**, --- F.Supp.2d ----, 2009 WL 1538086 [U.S.D.C. Conn. 2009].  Here, plaintiff was not notified of the adverse information until MMC notified her, which was well after Batts notified Axciom.

[69]    **Obabueki v. IBM Corp.**, 145 F.Supp.2d 371 [U.S.D.C. S.D. N.Y. 2001] [the court was analyzing the reasonableness of the CRA's procedures under 1681k thus it analyzed them under §1681e[b], yet applying the heightened strict procedures standard, as opposed to mere reasonableness].

[70]    **Poore v. Sterling Testing Sys.**, 410 F.Supp.2d 557, 572 [U.S.D.C. E.D. Ky. 2006].

Though previously charged with felony assault, he was only convicted of misdemeanor assault.  Plaintiff was given a job conditionally on a background check.  Defendant reported back that plaintiff was a felon. The opinion outlines the method used to obtain the data, but the court stated that defendant and its source failed to take "any independent steps to verify the substance of..."the reporting originating the erroneous information. 1681k, 1681e[b].  The court stated that employers are "placing increasing reliance on "credit reports and other background checks involving consumer reporting agencies. The court further remarked that the consumer reporting agencies' inaccuracies, in too many instances, adversely affected the ability of individuals to obtain employment. The court found that defendant was a consumer reporting agency, under 1681a[f]. Whether a consumer reporting agencies violates section 1681e[b] is based on: 1. Consumer report contains inaccurate data; and 2. The consumer reporting agency failed to use reasonable procedures to assure maximum possible accuracy. Citing **Sepulvado v. CSC**, 158 F.3d 890, 895 [5th Cir. 1998], the court found that a report is "inaccurate" when it is "patently incorrect" or when it is "misleading in such a way and to such an extent that it can be expected to [have an] adverse" effect.  The Fourth Circuit in **Dalton** held that a prima facie case is made by showing that the CRA prepared a report containing inaccurate information.  The

court noted a split in the circuits[71] on the issue of who bears the burden of proof on "reasonable procedures."  The Fourth Circuit, siding with the **Stewart** [D.C. Cir.] opinion, found that plaintiff bears the burden, contrasting **Guimond** and **Cahlin**.[72] In this respect, plaintiff Christensen disagrees with the Fourth Circuit.  The Eighth Circuit does not appear to have taken a position on this issue yet.

The **Dalton** court declined to consider whether an inaccuracy can be so egregious that it is presumed that the agency's procedures were unreasonable.  The issue of reasonable procedures will be a "jury question" in the overwhelming majority of cases," citing **Guimond** and **Andrews**, both from the Ninth Circuit.  **The plaintiff must present some minimal amount of proof of unreasonableness**.  Again, all courts are consistent in holding that "reasonableness" is a question of fact reserved solely unto

---

[71]    The Ninth and Eleventh Circuits have held that the defendant has the burden of proof. **Guimond v. Trans Union**, 45 F.3d at 1333 [9th Cir.]; **Cahlin**, 936 F.2d at 1156 [11th Cir.]. Only the D.C. Appellate Circuit and the Fourth Circuit have held otherwise. **Stewart**, 236 U.S.App.D.C. 146 [1984]; **Dalton v. Capital Associated Industries, Inc.**, 257 F.3d 409, 416 [4th Cir. 2001] [noting the split].

[72]    In order to make out a prima facie violation of 1681e[b], the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information. **Cahlin v. General Motors Acceptance Corporation**, 936 F.2d 1151, 1156 [11th Cir. 1991].  The court held that "a plaintiff may present his case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report and nothing more..." **Parker v. Parker**, 124 F.Supp.2d 1216 [U.S.D.C. N.D. Ala. 2000].

the jury.[73]  The same is true of "willfulness."[74]

On the second issue, the **Dalton** court addressed the "heightened standard for procedures" under 1681k, thus the consumer reporting agency must take even greater care. The court dismissed the consumer reporting agency's requirement to use strict procedures to assure the maximum possible accuracy under 1681k.  The court found that the **strict procedures verses reasonable procedures is significant**; citing **Equifax v. FTC**, 678 F.2d 1047, 1049 n.4 [11th Cir. 1982]; and **Obabueki v. IBM Corp.**, 137 F.Supp.2d 320, 348 [U.S.D.C. S.D. N.Y. 2001].

As with claims under sections 1681e[b] and 1681i[a], questions as to what is reasonable[75] are fact intensive and not

---

[73]     **Guimond v. Trans Union**, 45 F.3d, at 1333 [9th Cir.] ["The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."]; **Andrews v. TRW Inc.**, 225 F.3d 1063, 1068 [9th Cir. 2000] reversed on other grounds, **TRW v. Andrews**, 534 U.S. 19, 151 L.Ed.2d 339, 122 S.Ct. 441, 447 [2001]; **Dalton v. Capital Associated Industries, Inc.**, 257 F.3d 409 [4th Cir. 2001]; **Mathews v. GEICO**, 23 F.Supp.2d at 1164; **Thomas v. Trans Union, LLC**, 197 F.Supp.2d 1233 [U.S.D.C. Ore. 2002]; **Crabill v. Trans Union**, 259 F.3d 662, 664 [7th Cir. 2001]; **Olwell v. Medical Info. Bureau**, 2003 U.S.Dist.Lexis 442 [U.S.D.C Minn. 2003]; **Thomas v. Trans Union, L.L.C.**, 197 F.Supp.2d 1233, 1237 [U.S.D.C. Or. 2002]; **Batdorf v. Trans Union**, 2002 U.S.Dist.Lexis 9489 [U.S.D.C. N.D. Cal. 2002]; **Obabueki v. IBM**, 145 F.Supp.2d 371, 379 [U.S.D.C. S.D. N.Y. 2001]; **Cotto v. Jenney**, 721 F.Supp. 5 [U.S.D.C. Mass. 1989].

[74]     **Klutho v. New Day Financial, LLC**, 522 F.Supp.2d 1174, [U.S.D.C. E.D. Mo. 2007]; **Murphy v. Midland Credit Management, Inc.**, 456 F.Supp.2d 1082 [U.S.D.C. E.D. Mo. 2006]; **Ferrarelli v. Federated Fin. Corp. of America**, Slip Copy, 2009 WL 116972 [U.S.D.C. S.D. Ohio 2009]; **Edwards v. Toys R Us**, 527 F.Supp.2d 1197, 1210 [U.S.D.C. C.D. Cal. 2007] ["Willfulness under the FCRA is generally a question of fact for the jury."]; **Guimond v. Trans Union Credit Info. Co.**, 45 F.3d 1329, 1333 [9th Cir. 1995]; **Holmes v. Telecheck Intern., Inc.**, 556 F.Supp.2d 819, 847 [U.S.D.C. M.D. Tenn. 2008] ["Willfulness under the FCRA is generally a question of fact for the jury."].

[75]     In deciding if procedures are reasonable, the trier of fact must examine the agency's conduct in light of what a reasonably prudent person would do under the circumstances. **Bryant**, 689 F.2d 72, 78; **Sepulvado**, 158 F.3d

proper for summary judgment.  The same is true of willfulness. Plaintiff has more than shown that the consumer report and its follow-up verification [prior to the amended report] were inaccurate consumer reports.  Plaintiff has also show, in evidence, facts which call into question the "strictness" and, under 1681e[b], the "reasonableness" of defendants' procedures [or total lack thereof].

As Judge Ward held in **Pace v. Experian Information Solutions Inc.**, Not Reported in F.Supp.2d, 2004 WL 1057795 [U.S.D.C. E.D. Tex. 2004]: "To prove negligent noncompliance with §1681e[b], a plaintiff must establish that [1] inaccurate information was included in his credit report; [2] the inaccuracy was due to the defendant's failure to follow reasonable procedures to assure maximum possible accuracy; [3] the plaintiff suffered injury; and [4] the injury was caused by the inclusion of the inaccurate entry. See **Zala v. Trans Union, L.L.C.**, 2001 WL 210693, at *3 [U.S.D.C. N.D. Tex. Jan.17, 2001]. Under §1681e[b], a plaintiff must demonstrate that an inaccuracy in a credit report resulted from negligent failure to use reasonable procedures when the report originally was prepared, not upon reinvestigation. **Sepulvado v. CSC Credit Services, Inc.**, 158 F.3d 890, 895 [5th Cir.1998], cert. denied, 526 U.S. 1044, 119 S.Ct. 1344, 143

---

890, 896. This is a typically a fact question in most cases. **Cahlin**, at 1156; **Cousin v. Trans Union**, 2001 Westlaw 277841 [5th Cir. 3/21/01].

L.Ed.2d 507 [1999]; **Swoager v. Credit Bureau of Greater St. Petersburg, Florida**, 608 F.Supp. 972, 974-75 [U.S.D.C. M.D. Fla. 1985]. The FCRA, however, "does not impose strict liability for inaccurate entries." **Sepulvado**, 158 F.3d at 896. "The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances." **Thompson v. San Antonio Retail Merchants Assoc.**, 682 F.2d 509, 513 [5th Cir. 1982]. Section 1681e[b] "does not require that a consumer reporting agency follow reasonable procedures to assure simply that the consumer report be 'accurate,' but to assure 'maximum possible accuracy.'" **Pinner**, 805 F.2d at 1263. **Although Experian urges that its procedures were reasonable as a matter of law, the court disagrees and holds that the reasonableness of the procedures is a question for the jury.** The court notes that this holding on this issue is consistent with the holding of several other courts, including those in this district. See **Crabill v. Trans Union L.L.C.**, 259 F.3d 662, 664 [7th Cir. 2001]["The determination of the 'reasonableness' of the defendant's procedures, like other questions concerning the application of a legal standard to given facts [notably negligence, a failure to exercise reasonable care], is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness or

unreasonableness of the procedures is beyond question, which it is not in this case."]. As the court said in **Jensen v. Experian Info. Solutions, Inc.**, 2001 WL 1045510 [U.S.D.C. E.D. Tex. March 30, 2001][Faulkner, Magistrate Judge]: The mere fact that inaccurate information appeared on Plaintiff's credit report does not make Experian liable or demonstrate that reasonable procedures were not followed.  The law does not hold Experian strictly liable for the reporting of inaccurate information.  **The question that must be decided is did Experian follow reasonable procedures in creating Plaintiff's credit report**. Experian has presented evidence explaining the procedures it follows in creating credit reports. **The Court finds that in this case this decision cannot be settled by a motion for summary judgment**. **The question of whether Experian followed reasonable procedures must be decided by the trier of fact at trial**. Summary judgment should be denied on Plaintiff's claim that Experian violated §1681e[b]. [emphasis added]."[76]

To recover against a credit reporting agency under 15 U.S.C. 1681e[b], Plaintiffs must show proof tending to show that:

a]    The agency was negligent or wilful in that it failed to follow and use reasonable procedures to assure maximum possible accuracy of information about the Plaintiff;

---

[76]    **Bartels v. Retail Credit Co.**, 175 N.W.2d 292 [Neb. 1970].

b]   The agency reported inaccurate information[77] about the
       Plaintiff;

c]   Plaintiff was injured; and

d]   The agency's negligence or wilful conduct was the
       proximate cause of such injury.[78]

Recently in **Parker v. Parker**,[79] the court held that **"a plaintiff may present his case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report and nothing more...,"** citing **Philbin**, infra, at 965, which interpreted the Eleventh Circuit's ruling in **Cahlin**, supra.  The court noted that upon proof of an error, the "*burden shifts to the defendant to prove as an affirmative defense the presence of*

---

[77]    The standard of accuracy for credit reports embodied in FCRA is objective measure that should be interpreted in even-handed manner toward interests of consumers and creditors in fair and accurate reporting. **Cahlin v. GMAC**, 936 F.2d 1151 [11th Cir. 1991] [Fla.].  Technical accuracy is not the standard, a consumer report must be accurate to the maximum possible extent.  In essence, the trier of fact must weigh potential that information will create a misleading impression against availability of more accurate information and the burden of providing such information. **Alexander v. Moore & Associates, Inc.**, 553 F.Supp. 948 [U.S.D.C. Hawaii 1982]; **Cisneros v. U.S. Registry, Inc.**, 46 Cal.Rptr.2d 233, 39 C.A.4th 548 [Ca. App. 2d Dist. 1995].  The consumer reporting agency's and furnisher's duties to conduct reasonable reinvestigations, after accuracy of information is disputed, is not terminated by fact that information is accurate about someone else if that information is presented in such a manner as to create inaccurate impressions as to the credit history of a particular individual. **Lowry v. Credit Bureau, Inc. of Georgia**, 444 F.Supp. 541 [U.S.D.C. Ga. 1978].

[78]    **Guimond v. Trans Union Credit Info. Co.**, 45 F.3d 1329, 1333 [9th Cir. 1995] [Cal.]; **Cahlin v. GMAC**, 936 F.2d 1151 [11th Cir. 1991]; **Dalton v. Capital Associated Industries**, 257 F.3d 409 [4th Cir. 7/16/01]; **Bryant v. TRW, Inc.**, 487 F.Supp. 1234, 1238 [U.S.D.C. E.D. Mich. 1980], affirmed, 689 F.2d 72 [6th Cir. 1982]; **Richardson v. Fleet Bank**, 190 F.Supp. 2d 81, 87-88 [U.S.D.C. Mass. 2001]; **Zala v. Trans Union, LLC**, 2001 U.S. Dist. Lexis 549 [U.S.D.C. N.D. Tex. 2001].

[79]    124 F.Supp.2d 1216 [U.S.D.C. N.D. Ala. 2000].

*reasonable procedures*." Id.  In this case, Equifax also erroneously argued that it is plaintiff's burden of proof.

   Like in **Cahlin**, the credit bureau may only prevail in showing that the report was accurate. **Cahlin**, at 1156.  The **Parker** court, following **Cahlin**, held that if the report contains an error, then "whether defendants had in place reasonable procedures to report information and detect disparities is a question for the jury, not the court."  Summary judgment was denied.

## VI.   CAUSATION TO DAMAGE STANDARD

   The FCRA requirement that the consumer sustain some injury can be established by merely showing that the consumer reporting agency issued an erroneous reports to an institution with whom the consumer was [is] dealing.[80]  A job or credit denial is not required to make out a case under the FCRA provisions and stress induced maladies alone are sufficient as damages under the FCRA.[81]  Further, a consumer need not even prove out-of-pocket expenses in order to recover actual and punitive damages.[82]

---

[80]   **Hyde v. Hibernia Nat. Bank in Jefferson Parish**, 861 F.2d 446 [5th Cir. 1988], cert. denied, **Credit Bureau Services - New Orleans v. Hyde**, 109 S.Ct. 3199, 491 U.S. 910, 105 L.Ed.2d 706.

[81]   **Guimond v. Trans Union Credit Info. Co.**, 45 F.3d 1329 [9th Cir. 1995] [Cal.]; **Cushman v. Trans Union**, 920 F.Supp. 80, 1996 Westlaw 153218, at p.3 [U.S.D.C. E.D. Pa. 1996]; **Arriola v. Safeco**, 15 F.3d 1082 [Table, unpublished] 1993 Westlaw 530480 [9th Cir. 1993] [Idaho].

[82]   **Stevenson v. TRW, Inc.**, 987 F.2d 288, 294 [5th Cir. 1993]; **Thompson v. San Antonio Retail Merchants Assn.**, 682 F.2d 509, 514 [5th Cir. 1982] **Zala v. Trans Union, LLC**, 2001 U.S. Dist. Lexis 549 [U.S.D.C. N.D. Tex.  2001].

Courts have also held that loss of reputation can be inferred from nature of false publication that reflects adversely on consumer.[83]

The causation test that has been adopted nationwide, with almost no exceptions, was enunciated by the Third Circuit in **Philbin v. Trans Union**, 101 F.3d 957 [3rd. Cir. 1996].  A plaintiff may establish actual damages by producing sufficient evidence from which a reasonable trier of fact that the inaccurate entry was a "substantial factor" that brought about the denial of credit or other form of damage.[84]

Going one step further, the question as to whether a loss or damage was caused by a defamatory credit report is a factual issue for jury. **Luster v. Retail Credit Co.**, 575 F.2d 609 [8th Cir. 1978] [Ark.].  Here, plaintiff's testimony differs from MMC employees as to whether the retraction of the job was due to the report at issue.  Plaintiff testified that Pat Jepson told her that a substantial factor was the inaccurate consumer report that plaintiff questioned/disputed.[85]  That report had stopped the

---

[83]     **Collins v. Retail Credit Co.**, 410 F.Supp. 924 [U.S.D.C. Mich. 1976].

[84]     **Philbin v. Trans Union**, 101 F.3d 957 [3rd. Cir. 1996] [citing *Restatement [Second] of Torts* §431[a]; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* §41, at 266-68 [5th ed. 1984]]; **Graham v. CSC Credit Services, Inc.**, 306 F.Supp.2d 873 [U.S.D.C. Minn. 2004] **Garrett v. Trans Union, L.L.C.**, 2006 WL 2850499 at *10 [U.S.D.C. S.D. Ohio]; **Roberts v. Trans Union LLC**, 2007 WL 1308682 [U.S.D.C. E.D. Mich. 2007].

[85]     Plaintiff's deposition, taken 5/22/09, pp.107,112-113,152; Plaintiff's deposition, taken 6/22/09, pp.13-14,72-73.

employment contract process.  That is a credibility call for the jury, not on summary judgment.

## VII. DAMAGES

### [a]  Background

Plaintiff's damages seem to be the defendants' biggest bone of contention.  Plaintiff testified in deposition and will do so at trial that Mount Mercy told her that the reason it retracted the contract initially was due to the false report and, even after the so-called "amended" report, the contract was still retracted due to plaintiff's call to the Provost expressing concern that her reputation was now damaged at Mount Mercy and "for questioning the report of Mount Mercy's outside agency." All witnesses uniformly testified that plaintiff had been hired by MMC and _only the criminal records check report stood in the way of the contract_.  All other screening had been completed and plaintiff had been hired.

On the date that MMC called plaintiff to advise her that the criminal record report showed a conviction and that her contract was not forthcoming, plaintiff was in utter shock and panic. Plaintiff contacted Judge Mitchell in Uvalde County and asked for help.  Judge Mitchell contacted Mount Mercy to explain that plaintiff was not a criminal and he retrieved certified court records showing plaintiff was not the subject of the conviction. Judge Mitchell had actually presided over Mr. Leal's case.

Despite Judge Mitchell's call and fax of proof and Batts' call to
Axciom, the false report was not immediately retracted.  Judge
Mitchell's trial deposition has been taken and he testified about
plaintiff's shock and panic and his assistance in trying to
remedy the matter.  Further, plaintiff's domestic partner to whom
she is not married but has lived with for 15 years, Jon Novasad,
testified as to plaintiff's extreme shock and panic and other
damages.

Defendants claim that the false report was corrected in
merely two days and they say "no big deal."  They claim that the
"amended report" wherein the conviction was removed should have
cured the issue.  The report stopped the contract process dead.
Plaintiff, not the defendants, scurried to garner proof that it
was not her conviction.  Defendants ignored Batts and Judge
Mitchell's proof and calls.  Defendants waited and then issued an
"amended report" without explanation as to the first report [and
a second "verification" and second false reporting of the same
information on the day after the original reporting when
plaintiff first contested the false information] or as to the
second verification and re-reporting of the conviction.  Thus,
Mount Mercy had been told that plaintiff was convicted of
domestic violence [a course she teaches] twice within 48 hours
and then an "amended report" provided without explanation
removing the conviction.  Plaintiff reasonably contacted Mount

-35-

Mercy to ask about whether the faculty and staff knew of the false report and to inquire as to whether as to the degree to which her reputation was damaged.  She was told that her contract and job were withdrawn.

Plaintiff and Mr. Novasad had placed their home for sale and were in the process of moving to Iowa, after costly repairs and sale efforts.[86]  Both had tendered notice to their employers that they were leaving and moving.  Plaintiff had incurred extraordinary expenses and expended a large amount of time in securing the job at Mount Mercy.  While plaintiff and Novasad were able to get their jobs back, the incident left concerns that they were seeking to leave initially.[87]  Plaintiff just recently received tenure at SAU and she had a good reputation at SAU.  Plaintiff has legitimate and real concerns that the false information was not corrected in Acxiom's database and may recur.

The FCRA was crafted to protect consumers from the transmission of inaccurate information about them.[88]  It is to be liberally construed in favor of consumers, not in favor of the credit and credit reporting industries.[89]  The FCRA was crafted

---

[86]   Plaintiff's deposition, taken 5/22/09, pp.128-131,161-165; Plaintiff's deposition, taken 6/22/09, pp.39-52.

[87]   Jon Novasad deposition, taken 6/22/09, pp.32-33,50,52.

[88]   **Kates v. Croker National Bank**, 776 F.2d 1396, 1397 [9th Cir. 1995].

[89]   **Guimond v. Trans Union Credit Information, Co.**, 45 F.3d 1329 [9th Cir. 1995] [Cal.]; **Kates v. Croker National Bank**, 776 F.2d 1396, 1397 [9th Cir. 1995]; **Litschitz v. American Express Co.**, 560 F.Supp. 458 [U.S.D.C. Pa. 1983];

"to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report."[90]

Plaintiff has asserted that defendants willfully[91] [or alternatively negligently] violated the FCRA by: [1] failing to use strict procedures [1681k] to assure the maximum possible accuracy of the consumer reports it published about plaintiff to MMC; [2] failing to properly certify, train and oversee [1681e] its data gatherer; [3] failed to provide the notice to plaintiff, as required in section 1681k[1]; and [4] failing to properly reinvestigate the disputed error resulting in an initial verification of the false reporting and a second affirmation of the false information to MMC. Section 1681i.  Plaintiff also advanced state law negligence claims, defamation, invasion of privacy claims, and breach of contract/third party beneficiary theory claims but those state law claims are going to be dismissed so that the focus of the trial is placed on the FCRA claims, particularly as the FCRA supplies the same and greater remedies than provided by state laws.

Plaintiff has asserted claims for damages, including: actual

---

**Jones v. Federated Financial Reserve Corp.**, 144 F.3d 961 [6th Cir. 1998] [Mich.]; **Klapper v. Shapiro**, 586 N.Y. S.2d 846 [N.Y. Sup. 1992]; **Hovater v. Equifax, Inc.**, 823 F.2d 413, 417 [11th Cir. 1987].

[90]    **Equifax, Inc. v. Federal Trade Comm'n**, 678 F.2d 1047, 1048 [11th Cir.1982], quoting S.Rep. No. 517, 91st Cong., 1st Sess. 1 [1969].

[91]    Under **Safeco v. Burr**, the United States Supreme Court, in an FCRA case, held that "willful" means "reckless disregard."  127 S.Ct. 2201, 2007 WestLaw 1582951.  Plaintiff's deposition, taken 5/22/09, p.113-114.

damages [afforded under sections 1681n and 1681o, enabling provisions of the FCRA and under state law], statutory [afforded under 1681n upon proof of willful violation[s] of the FCRA and even in the absence of actual damages], exemplary and punitive damages [afforded under 1681n upon proof of willful violation[s] of the FCRA]; and out-of-pocket expenses, loss of employment, loss of wages and benefits, loss of advancement opportunities, costs and time in attempting to repair her consumer reports, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security [all of these categories are afforded under sections 1681n and 1681o, enabling provisions of the FCRA and under state law]; and attorneys' fees and litigation expenses [both afforded under sections 1681n and 1681o, enabling provisions of the FCRA and regardless of whether willful violations are proven].[92]  Plaintiff's testimony alone is sufficient to prove her damage claims.[93]

---

[92]    Stress-induced maladies alone are sufficient as damages under FCRA. **Cushman v. Trans Union**, 1996 Westlaw 153218, at p.3 [U.S.D.C. E.D. Pa. 1996]; **Arriola v. Safeco**, 15 F.3d 1082 [Table, unpublished] 1993 Westlaw 530480 [9th Cir. 1993] [Idaho].

[93]    **Balistrieri**, 981 F.2d at 933; **Wahi v. N. Trust Corp.**, 2002 WL 31133205, at *7 [U.S.D.C. N.D. Ill. 2002] [testimony alone is sufficient to support an award of damages]; **Kronstedt v. Equifax**, 2001 WL 34124783, at *13 [U.S.D.C. W.D. Wis. 2001] [concluding that evaluation of emotional distress claim stemming from release of inaccurate and derogatory credit information on credit report is best left to the jury]; **Pumphrey v. Stephen Homes, Inc.**, 1994 WL 150947, at *7 [U.S.D.C. Md. 1994] [testimony alone sufficient to support

**[b]  Out-of-Pocket Expenses**[94]

Plaintiff sustained approximately $5,000 in out of pocket expenses.[95]

**[c]  Loss of Employment**

Plaintiff and her long-time companion, Jon Novasad, both resigned their jobs in anticipation of the employment contract.[96] The only hurdle was a clear criminal records check. Citations supra.  Plaintiff and Novasad had to go back to their respective employers and ask for their jobs back.[97]  It was very humiliating to have to ask for their jobs back after resigning. Id. Professor positions like that sought by plaintiff are very difficult to acquire.[98]

Plaintiff's testimony differs from MMC employees as to

_____

award].

[94]    **Thomas v. Trans Union Credit Information Co.**, 1992 Westlaw 280516, at *4 [U.S.D.C. N.D. Ill. 1992]; **Casella v. Equifax Credit Information Services**, 56 F.3d 469, 474 [2d Cir. 1995] [N.Y.]; **Cook v. ECIS**, 1992 Westlaw 356119 [U.S.D.C. Md. 1992]. See **Bakker v. McKinnon**, 152 F.3d at 1013 [economic damages or "out-of-pocket" expenses not a prerequisite to award of damages under the FCRA. Awarding actual damages based on mere claims of emotional distress]; **Millstone v. O'Hanlon Reports, Inc.**, 528 F.2d 829, 834-35 [8th Cir. 1976] [awarding actual damages under the FCRA based on claims of emotional distress only]; **Guimond v. Trans Union Credit Information Co.**, 45 F.3d 1329, 1332-33 [9th Cir.1995] [same]; **Stevenson v. TRW Inc.**, 987 F.2d 288, 296-97 [5th Cir. 1993] [emotional distress damages may include damages for embarrassment, humiliation and mental anguish].

[95]    Plaintiff's deposition, taken 5/22/09, pp.131-133,159-161.

[96]    Jon Novasad deposition, taken 6/22/09, pp.20-33,50,52.

[97]    Jon Novasad deposition, taken 6/22/09, pp.32-33,50,52.

[98]    Jon Novasad deposition, taken 6/22/09, pp.26.

whether the retraction of the job was due to the report at issue. Plaintiff testified that the MMC's Human Resources Director Pat Jepson told her that a substantial factor was the inaccurate consumer report that plaintiff questioned/disputed.[99]  That report had stopped the employment contract process.

### [d]  Loss of Wages and Benefits[100]

Plaintiff provided a calculation of her lost salary claims and loss of the benefit of salary raises.[101]

### [e]  Lost Economic Opportunity[102]/Loss of Advancement Opportunities/Reputation Damages[103]

The position at MMC afforded plaintiff a much greater opportunity to advance in her career.[104]  Plaintiff will not be at MMC as a result of defendants' false report.[105]  Plaintiff had planned to be the director of an institute of engagement for students and faculty and that chance has been lost.  Plaintiff

---

[99]    Plaintiff's deposition, taken 5/22/09, pp.107,112-113,152.

[100]   **Millstone v. O'Hanlon Reports. Inc.**, 528 F.2d 829, 834-35 [8th Cir. 1976].

[101]   Plaintiff's deposition, taken 6/22/09, pp.61-63.

[102]   **Diaz v. Gates**, 420 F.3d 897 [9th Cir. 2005] [en banc].

[103]   Loss of reputation can be inferred from nature of false publication that reflects adversely on consumer. **Collins v. Retail Credit Co.**, 410 F.Supp. 924 [U.S.D.C. Mich. 1976].

[104]   Plaintiff's deposition, taken 5/22/09, pp.33,104-105,116,138; Plaintiff's deposition, taken 6/22/09, pp.22-25,61-67.

[105]   Plaintiff's deposition, taken 5/22/09, pp.132-135.

wanted the opportunity to work in an environment that was much more supportive of her publications.  The loss of ability to engage in advanced scholarship has a direct impact on her salary and any book proposals or ways to raise funds.

Plaintiff worked for years to be able to advance in her career and she sustained reputational injury with MMC.[106]

### [f]  Costs and Time in Attempting to Repair her Consumer Reports[107]

Plaintiff spent a great deal of time, effort and resources in trying to get the false report and its effects corrected.[108] While an amended report was issued, plaintiff had and has real concerns that the defendants could re-report the same information again.

### [g]  Pain and Suffering, Humiliation, Embarrassment, Inconvenience, Frustration, Emotional Distress, Mental Anguish, and Fear of Personal and Financial Safety and Security[109]

---

[106]    Plaintiff's deposition, taken 5/22/09, pp.97-98,108-119; Plaintiff's deposition, taken 6/22/09, pp.39-42,50-51,61-62,70-71.

[107]    **Jones v. Credit Bureau of Huntington**, 399 S.E.2d 694 [W. Va. 1990].

[108]    Jon Novasad deposition, taken 6/22/09, pp.48-49.

[109]    **Fischl v. GMAC**, 708 F.2d 143 [5th Cir. 1983]; **Jones v. Credit Bureau of Huntington**, 399 S.E.2d 694 [W. Va. 1990]; **Bryant v. TRW, Inc.**, 487 F.Supp. 1234 [U.S.D.C. Mich. 1980], affirmed, 689 F.2d 72 [6th Cir. 1982]; **Johnson v. Department of Treasury, I.R.S.**, 700 F.2d 971, 984 [5th Cir. 1983]; **Thompson v. San Antonio Retail Merchants Assn.**, 682 F.2d 509, 514 [5th Cir.

Resigning and then having to ask for their jobs back was truly humiliating to plaintiff and Novasad.[110]  Novasad was present when plaintiff learned of the false criminal records consumer report and that her employment contract was not being sent, as had been promised.  Novasad described plaintiff as turning "sheet white."[111]  Plaintiff was absolutely panic-stricken and started calling friends and colleagues in an effort to get help in rectifying the defendants' false report.[112]  Novasad described plaintiff as "terrified" as plaintiff had spent countless hours applying, being screened, interviewing, traveling to MMC for in-person interviews, providing sample lectures, meeting with faculty and administration, and negotiating her contracts terms [not to mention all of her preparation for a serious career relocation states away], all to see it vanish due to defendants' $24.00 consumer report.[113]  Novasad described plaintiff as experiencing severe stress, depression, anxiety, lack of concentration, extreme worry, sleeplessness, nightmares,

---

1982]; **Millstone v. O'Hanlon Reports, Inc.**, 383 F.Supp. 269 [U.S.D.C. E.D. Mo. 1974], affirmed, 528 F.2d 829, 834-35 [8th Cir. 1976]; **Guimond v. Trans Union Credit Info. Co.**, 45 F.3d 1329 [9th Cir. 1995] [Cal.].

[110]    Jon Novasad deposition, taken 6/22/09, pp.32-33,50,52.

[111]    Jon Novasad deposition, taken 6/22/09, p.49. **Carey v. Piphus**, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) [supporting witness testimony].

[112]    Jon Novasad deposition, taken 6/22/09, pp.26-27,48,52.

[113]    Jon Novasad deposition, taken 6/22/09, pp.26-27,31-34,47-50,52. Plaintiff's deposition, taken 5/22/09, pp.70,136-145.

dis-associative behavior, panic and other symptoms, all caused by the aftermath of the false consumer report at issue.[114]  She experienced fear of permanent ruin of her reputation and recurrence of the false reporting.[115]

### [h]  Loss of Incidental Time

Plaintiff lost an inordinate amount of time in her employment search efforts and trying to correct the defendants' false consumer report. Citations to evidence supra.

## VIII. STANDARD OF REVIEW - MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is only proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[116]  Any issues of fact and inferences to be drawn therefrom are interpreted in favor of the non-moving party.[117]  Rule 56 mandates the entry of summary judgment, only after adequate time for discovery and upon prima

---

[114]    Jon Novasad deposition, taken 6/22/09, pp.26-27,31-36,41-43,47-50,52,55. Plaintiff's deposition, taken 5/22/09, pp.70,137-146.

[115]    Plaintiff's deposition, taken 5/22/09, pp.137-138; Plaintiff's deposition, taken 6/22/09, pp.47-48,53-54.

[116]    **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 [1986]; **Hysten v. Burlington N. & Sante Fe Ry.**, 296 F.3d 1177 [10th Cir. 2002].

[117]    **Williams v. Rice**, 983 F.3d 177 [10th Cir. 1993]; **Zala v. Trans Union, LLC**, 2001 U.S.Dist.Lexis 549 [U.S.D.C. N.D. Tex.  2001].

facie motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial.[118]

Of course, that burden of production by the non-movant is only triggered when the movant has brought forth evidence countering the claims of the non-movant and such evidence must be adequate to cause the court to test the non-movant's claims. The moving party has the initial burden of proof[119] and, only once a prima facie case is made, the non-moving party must respond with evidence to contradict and show the existence of a genuine issue of material fact.[120]  If the movant demonstrates a prima facie showing, including its burden of production of evidence and not mere assertions, then and only then the non-movant must show the existence of a material issue of fact through production of evidence. Id.

---

[118]    **Willis v. Roche Biomedical Laboratories, Inc.**, 61 F.3d 313, 315 [5th Cir. 1995]; **Riggs v. Anthony Auto Sales**, 32 F.Supp.2d 407 [U.S.D.C. W.D. La. 1998].

[119]    "Where Trans Union is attempting, however, affirmatively to disprove Zala's claim by showing that it did not violate the FCRA, it shoulders a summary judgment burden that is akin to that borne by a party who will have the burden of proof on a claim at trial. It must therefore adduce evidence that establishes "'beyond peradventure all of the essential elements of the . . . defense.'" **Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.**, 878 F.Supp. 943, 962 [U.S.D.C. N.D. Tex. 1995] [Fitzwater, J.] [quoting **Fontenot v. Upjohn Co.**, 780 F.2d 1190, 1194 [5th Cir. 1986]." **Zala v. Trans Union, LLC**, 2001 U.S.Dist.Lexis 549 [U.S.D.C. N.D. Tex.  2001].

[120]    **Whitesides v. Equifax**, 125 F.Supp.2d 813, 816 [U.S.D.C. W.D. La. 2000].

**CONCLUSION**

    Defendants' motions should be denied.

                Respectfully submitted,

                **S/ DAVID A. SZWAK**

                _____

                **David A. Szwak**
                **BODENHEIMER, JONES & SZWAK, LLC**
                416 Travis Street, Suite 1404
                Mid South Tower
                Shreveport, Louisiana 71101
                [318] 424-1400
                FAX   221-6555
                BJKS1507@aol.com
                **Counsel for Plaintiff**

**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that a copy of the above and foregoing has been served upon all counsel of record, as noted below, by placing a copy of same in the United States Mail, properly addressed and first class postage pre-paid, on this the 22nd day of July, 2009.

**Randy P. Murphy**
**Jodie L. Hill**
**Anderson, Murphy & Hopkins, L.L.P.**
400 West Capitol Avenue
Suite 2470
Little Rock , Arkansas   72201-3446
(501) 372-1887
Fax: (501) 372-7706
Email: murphy@amhfirm.net
Email: hill@amhfirm.net
**Counsel for defendant, Per Mar, Inc.**

**Amy Lee Stewart**
**Rose Law Firm**
120 East Fourth Street
Little Rock , Arkansas   72201
501-377-0334
Fax: 501-375-1309
Email: astewart@roselawfirm.com
**Counsel for defendant, Acxiom Information Security Service, Inc.**

                S/ DAVID A. SZWAK

_____
**OF COUNSEL**