IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CHRISANNE CHRISTENSEN                                    PLAINTIFF

              v.              Civil No. 08-4081

ACXIOM INFORMATION SECURITY SERVICES,
INC.; and PER MAR, INC. a/k/a PER
MAR SECURITY AND RESEARCH CORP. d/b/a
PER MAR CONSULTING AND INVESTIGATIONS
GROUP                                                   DEFENDANTS

                        <u>O R D E R</u>

     Now on this 6th day of August, 2009, come on for
consideration the following:

     *    defendant Per Mar Security Services, Inc.'s **Motion For
Summary Judgment** (document #46);

     *    **AISS' Motion For Summary Judgment** (document #49);

     *    **AISS' Amended/Supplemental To [sic] Motion For Summary
Judgment** (document #56);

     *    defendant Per Mar Security Services, Inc.'s **Motion For
Reconsideration And Response To Plaintiff's Motion For Enlargement
Of Time To Respond To Defendants' Motions For Summary Judgment**
(document #60); and

     *    **Plaintiff's Motion To Dismiss State Law Claims Only**
(document #61),
and from said motions, and the responses thereto, the Court finds
and orders as follows:

     1.   Plaintiff's Complaint alleges violations of the Fair

Credit Reporting Act, as well as state law claims for negligence, defamation, invasion of privacy, and breach of contract. Plaintiff now moves to dismiss her state law claims, and that motion will be granted.

2.  Defendant Per Mar Security Services, Inc., asks the Court to reconsider its Order allowing plaintiff additional time to respond to the motions for summary judgment. That motion will be denied.

3.  The remaining motions seek summary judgment on plaintiff's claims that defendants violated **§ 1681e(b)** and **§ 1681k** of the Fair Credit Reporting Act ("FCRA"). Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a

genuine dispute.  **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, **838 F.2d 268 (8th Cir. 1988).**

4.  Pursuant to **Local Rule 56.1**, the parties filed statements of facts which they contend are not in dispute. Unfortunately, those documents are full of extraneous information, and the purported denials are not numbered in such a way as to match the assertions, making them virtually useless for the Court's purposes in establishing a basis of uncontested facts from which to begin its analysis of the issues presented.  The Court has, instead, turned to the Complaint and the Answers thereto, and gleans the following facts which appear to be undisputed:

\*   In connection with a job application to Mount Mercy College ("Mount Mercy"), plaintiff Chrisanne Christensen ("Christensen") consented to a background investigation.

\*   Mount Mercy requested the background investigation from defendant Per Mar Security and Research Corp. ("Per Mar"), a consumer reporting agency as defined in **15 U.S.C. § 1681a.**

\*   Per Mar, in turn, sought information about Christensen from Acxiom Information Security Services, Inc. ("Acxiom"), another consumer reporting agency as defined in **15 U.S.C. § 1681a.**

\*   Mount Mercy provided Per Mar with Christensen's name, date of birth, and social security numbers, and Per Mar in turn provided Acxiom with that information.

\*   A consumer report, as defined in **15 U.S.C. § 1681a,**

-3-

regarding Christensen was eventually prepared and presented to Mount Mercy. This consumer report contained inaccurate information to the effect that Christensen had been convicted of a crime ("assault, family violence") in Uvalde, Texas.

    \* Christensen was not hired by Mount Mercy.

    5. The FCRA provides a private right of action for willful noncompliance, **15 U.S.C. § 1681n,** and for negligent noncompliance, **15 U.S.C. § 1681o.** In a case of willful noncompliance, actual or statutory -- as well as punitive -- damages may be recovered; in a case of negligent noncompliance, actual damages must be shown.

    Christensen alleges that defendants either willfully or negligently failed to comply with **§ 1681e(b),** which requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual" to whom a consumer report relates.

    She also alleges that defendants either willfully or negligently failed to comply with **§ 1681k,** which provides that (where a specified type of notice is not given)

> [a] consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall . . . (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record

-4-

relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

While **§ 1681k** does not specifically require that a consumer report be "accurate," all parties appear to concede that accuracy is a requirement of consumer reports under **§ 1681k**, and the Court has analyzed the motions on that basis.

There is no dispute that the consumer report in question was furnished for employment purposes; that it reports matters from the public record; that it was likely to have an adverse effect upon Christensen's ability to obtain employment; and that the statutory notice was not given to Christensen.

6.    Defendants contend that there is no genuine dispute that they complied with the FCRA, and that Christensen cannot establish that she has any damages causally related to the admitted error in the consumer report they furnished to Mount Mercy. They also contend that Christensen's damages are too speculative to be recoverable, and that there is no genuine issue of material fact with regard to the issue of punitive damages.

7.    An examination of the various depositions and unchallenged documents filed in connection with the pending motions reflects the following evidence which would support Christensen's theories of recovery:

*    The erroneous information in question was acquired via a chain of requests. Mount Mercy requested information from Per

Mar; Per Mar requested information from Acxiom; Acxiom requested information from a subcontractor named Ramona Batts ("Batts"); and Batts either requested information from an unidentified person then in her employ, or called the courthouse to obtain information over the telephone (Batts is not sure which way she handled this search, because she has no documentation and cannot recall the name of the employee, but she is sure that she did not go in person to the Uvalde County courthouse to handle the search in person).

    *    Acxiom assigns a "control number" to the consumer (the person being researched), and the consumer is identified by that control number on the documents upon which information is submitted to Acxiom.  Batts testified that the error with regard to Christensen occurred when "the researcher or the clerk -- I don't know which one" put Christensen's control number on an Acxiom form containing information about another consumer, who had a criminal record.

    *    The Uvalde search took place on May 9, 2008.  Batts discovered the error later the same day, and immediately notified Acxiom.  She was told that the erroneous information had already been delivered to the end user.  There is no evidence that Acxiom or Per Mar took any steps to notify the end user of the mistake.

    *    Christensen learned of the erroneous report on May 12, 2008, and immediately began trying to rectify the situation.  She

-6-

contacted Mount Mercy, and spoke with Patrick Jepson, Director of Human Resources, who contacted Per Mar.  According to an e-mail from Jepson to Christensen, "Per Mar Security investigations have checked and confirmed your records.  They have contacted me and they request you to contact their Compliance department at the following number. . . ."

* Christensen responded to Jepson's e-mail that she had contacted Per Mar and "they refused to investigate this issue even when I supplied them with the corrected name.  They did say they would request court records as per their usual plan."

* Later that day, Jepson sent an e-mail to Christensen saying that she could have 30 days "to provide Mount Mercy College with official court records documenting that your record has been expunged of the erroneous conviction.  Upon receipt of this documentation, we will issue you a contract confirming the verbal offer extended to you by Dr. Damsteegt. Without the documentation, the College will rescind the offer."

* On May 13, 2008, Daniel P. Conroy, in the Investigations Department of Per Mar, advised Christensen to contact Acxiom and ask for their compliance department to file a claim. He advised that "[t]hey will assist you in getting this matter straightened out for you."

* On May 14, 2008, Acxiom generated a report showing that the Court Record Check for Uvalde County, Texas, was "Clear."

-7-

* Conroy testified that when Per Mar receives requests for consumer reports, the searches are parceled out to various vendors, and that Per Mar does not check the resulting reports for accuracy, relying instead on its vendors for accuracy. If the subject of a consumer report lodges a complaint, Per Mar simply advises them to call the vendor who supplied the information to Per Mar.

* Curt Schwall, Compliance Unit Leader for Acxiom, testified that Acxiom does not make a regular practice of double-checking negative criminal information reported to it by its searchers. When the information in question from Batts was received, an Acxiom employee typed up the consumer report, which was then reviewed for compliance with FCRA and state law by another Acxiom employee. No one double-checked the accuracy of the information supplied by Batts.

* Schwall testified that researchers such as Batts are required "to sign off on our training literature, sign a searcher agreement, and undergo quality testing." The quality testing consisted of periodic audits, but Schwall could not recall any of those audits. Schwall also testified that Acxiom also ran a background check on Batts.

* Batts testified that she was sure that Acxiom provided her some training related to the FCRA, but she could not recall what it consisted of. She did not go to their facilities for any

training and she was not provided with any information about how to read the public record, nor any videotaped training.  Her retainer agreement and her "public record searcher contract" have no information about compliance with the FCRA.  She was not given any directives about reinvestigation of contested information. Batts does believe that her searches were "audited" by Acxiom, because she received several "certifications of excellence" from Acxiom.

* Batts testified that Acxiom was "desperate for researchers," and that she agreed to do research in Uvalde County even though "it was too far to work with."  She also testified that she handled a large volume for Acxiom, at one time doing "doing 50 to 100 names a day," with Acxiom wanting results within 24 hours.

* An exhibit to Schwall's deposition is a letter from Tony Noar of Acxiom to Batts, dated October 3, 2008, stating that because of "the number of issues" relating to "missing or inaccurate record information" in searches, Acxiom was terminating Batts.

* Jeannine Payne, Fair Information Practice Specialist for Acxiom, testified by deposition that she and her co-workers handle one to three disputes daily concerning consumer reports furnished by Acxiom.  She reinvestigated Christensen's consumer report, having one of her co-workers run a state-wide search for criminal

records, and contacting court personnel in Uvalde County, Texas. She determined that the criminal record belonged to one Christopher Leal, whose date of birth, Social Security number, and address did not match those of Dr. Christensen. Payne testified that Acxiom provided her training in reading criminal court documents, but she was not able to recall any specifics about such training.

8.   On the foregoing evidence, the Court finds no genuine issue of material fact in dispute as to willful failure to follow reasonable procedures under **§ 1681e(b)** or strict procedures under **§ 1681k.**   Willful noncompliance under the FCRA consists of "knowingly and intentionally committ[ing] an act in conscious disregard for the rights of others." **Philbin v. Trans Union Corp.**, **101 F.3d 957, 970 (3rd Cir. 1996).** There is no such showing here. All the evidence suggests that what occurred was the result of simple human error, writing the wrong control number on a document.  The FCRA

> does not render consumer reporting agencies strictly liable for inaccuracies in a report.  There must be a showing that the inaccuracy resulted from the agency's failure to "follow reasonable procedures to assure maximum possible accuracy."

**Hauser v. Equifax, Inc.**, **602 F.2d 811, 814-15 (8th Cir. 1979).** Summary judgment as to Christensen's claims, to the extent they arise under **§ 1681n**, is appropriate.

9.   Christensen's claim under **§ 1681o** requires proof that

Per Mar or Acxiom acted negligently in failing to follow reasonable procedures or strict procedures to assure maximum possible accuracy of the information with regard to Christensen. The Court finds that there are genuine issues of material fact as to the negligence claim.

Giving the evidence the inferences most favorable to Christensen, the trier of fact could conclude that Acxiom failed to sufficiently vet its researchers before hiring them, or to properly train and monitor them after hiring them.  It could also find that Acxiom pressured Batts to do too much work, in too little time, over too large a territory, leading her to take unacceptable shortcuts in doing the research.  It could conclude that the error in Christensen's consumer report was proximately caused by some or all of these problems.  Noar's termination letter to Batts -- which referred to a "number of issues" relating to "missing or inaccurate record information" in searches -- and Batts' inability to give any specifics about who conducted the Christensen search or how, would support such a conclusion.

With regard to Per Mar, the issue is closer.  However, as noted in **Dalton v. Capital Associated Industries, Inc.**, **257 F.3d 409, 417 (4th Cir. 2001),** what is reasonable is a jury question in the "overwhelming majority" of cases, and in a **§ 1681e(b)** case, "[a] jury could properly conclude that . . . [the reseller] should have had procedures in place to instruct its subvendors on the

appropriate sources for reliable information about a person's criminal record." Given that the ultimate subvendor in this case is an unidentified person about whom absolutely nothing is known, the jury could find that Per Mar did not use either strict or reasonable procedures to maintain the accuracy of the information it acquired from its subvendors for resale.

10. The Court turns now to the issue of damages, and specifically, whether there is a genuine dispute of material fact about whether the inaccurate consumer report caused Christensen any damages.

The primary category of damages relates to the loss of the Mount Mercy job, which Christensen attributes entirely to the erroneous consumer report. Christensen testified by deposition to her belief that she "lost credibility" with Mount Mercy over the erroneous report. The Mount Mercy job called for a person to be a "role model," and Christensen would be teaching classes about "psychology and domestic violence." She believes that the erroneous report indicating that she was guilty of domestic violence impaired her credibility.

Christensen's contention that the report was the proximate reason she did not get the Mount Mercy job offer is directly contradicted by the deposition testimony of Dr. Marsden, Provost of Mount Mercy, who testified that the erroneous consumer report was not the reason Mount Mercy withdrew its offer of employment.

-12-

He testified that the reason was Christensen's demeanor during a telephone conversation he had with her -- after the "clear" consumer report came back -- in which she became agitated and said that Mount Mercy had "put her through hell, they had put her family through stress, that we had tarnished her reputation." Dr. Marsden testified that Christensen told him she "had interviewed elsewhere," and that "she was using this as a situation to gauge how we might treat her as a future employer."

Dr. Christopher Blake, President of Mount Mercy, confirmed that the telephone call and Christensen's behavior during the call, was the reason Mount Mercy withdrew its offer of employment, not the erroneous consumer report.  He also testified that this call took place *after* Patrick Jepson ("Jepson"), Director of Human Resources at Mount Mercy, had advised Christensen that a clear background check had been received and that Mount Mercy would be sending her a contract.

The testimony of Dr. Marsden and Dr. Blake is borne out by an e-mail message from Jepson to Christensen, dated May 15, 2008, stating "I received the background report this morning from Per Mar Consulting & Investigations Group reporting 'no records found' under the criminal history search, therefore I will be mailing your contract today. . . .  I am pleased this issue has been resolved and I look forward to seeing you on campus."

Jepson testified that the background check was not the reason

the job offer was withdrawn, that it was "water over the dam," and his e-mail -- written before the telephone call between Christensen and Marsden -- supports this testimony.  Christensen also testified that Jepson told her the job offer was withdrawn "because I had questioned their agency and contacted the Provost."

In the face of the overwhelming evidence from the Mount Mercy witnesses that Christensen's telephone call to Dr. Marsden was the reason she did not get the Mount Mercy job, Christensen's "belief" that the erroneous report was the reason she did not receive the contract is insufficient to create a genuine dispute as to any damages related to loss of the Mount Mercy position.  Summary judgment in favor of the defendants -- as to this category of damages -- is, therefore, appropriate.

That does not end the damages issue, however.  While there is no evidence to support Christensen's claims for loss of employment and expenses related thereto, she also claims that she suffered emotional distress as a result of the erroneous consumer report.  Recovery for emotional distress has long been a recognized component of FCRA remedies.  **Millstone v. O'Hanlon Reports, Inc.**, **528 F.2d 829, 834-35 (8th Cir.1976)**.

There is testimony that Christensen, a psychology teacher who teaches about the psychology of domestic violence, suffered shock and panic upon learning that a consumer report showed that she had committed an act of domestic violence, and had to invest time and

-14-

money in correcting the report.  The Court finds that a jury issue exists as to whether Christensen suffered emotional distress as a direct result of the erroneous consumer report, and what the value of any such distress might be.

IT IS THEREFORE ORDERED that Per Mar Security Services, Inc.'s **Motion For Reconsideration And Response To Plaintiff's Motion For Enlargement Of Time To Respond To Defendants' Motions For Summary Judgment** (document #60) is **denied**.

IT IS FURTHER ORDERED that **Plaintiff's Motion To Dismiss State Law Claims Only** (document #61) is **granted,** and plaintiff's state law causes of action are **dismissed without prejudice**.

IT IS FURTHER ORDERED that Per Mar Security Services, Inc.'s **Motion For Summary Judgment** (document #46) is **granted in part and denied in part**.  The motion is granted insofar as it seeks dismissal of Christensen's claims for willful violation of the FCRA, for punitive damages, and for damages relating to her loss of the Mount Mercy position.  The motion is denied in all other respects.

IT IS FURTHER ORDERED that **AISS' Motion For Summary Judgment** (document #49) and **AISS' Amended/Supplemental To [sic] Motion For Summary Judgment** (document #56) are **granted in part and denied in part.**  The motions are granted insofar as they seek dismissal of Christensen's claims for willful violation of the FCRA, for

-15-

punitive damages, and for damages relating to her loss of the Mount Mercy position.   The motions are denied in all other respects.

**IT IS SO ORDERED.**

/s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**